**In re William & Rosemary DAVIS, Debtors.**

**Bankruptcy No. BK. 91–4625–LN.**

United States Bankruptcy Court,
W.D. Oklahoma.

Nov. 22, 1991.

James R. Price, Oklahoma City, Okl., for debtors.

Rollin Nash, Jr., Kevin Kelley, Oklahoma City, Okl., for creditor.

## ORDER ON MOTION TO AVOID LIEN

PAUL B. LINDSEY, Bankruptcy Judge.

### THE ISSUE AND THE PLEADINGS

In January 1991, debtors executed a promissory note in the amount of $4,443.56 with American General Finance, Inc. ("AGF"). Debtors at that time also granted AGF a nonpossessory, nonpurchase money security interest in the following property: A Pentex [sic] Camera; a Kodak projector; four (4) rods and reels; a ten-speed bicycle; a "Toro Sears" lawn mower;[1] a Sears rototiller; a Sears "weedeater"; a home computer; Wilson golf equipment; tennis equipment; a JCP cassette recorder; an MCS stereo; an RCA television;[2] an RCA VCR; Nintendo video games; and a table saw.

On July 1, 1991, debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code.[3] On August 1, 1991, debtors filed a motion to avoid AGF's lien on the above described property pursuant to § 522(f).[4] AGF filed its objection to the motion, debtors responded and AGF replied, each with supporting brief.

■ In their motion, debtors assert that their interest in the property does not exceed the maximum allowable amount pursuant to § 522(d) and that AGF's lien impairs exemptions allowed to them pursuant to § 522(b) and (d). It should be noted at the outset that § 522(d) has no applicability in this case since, under authority of § 522(b), the State of Oklahoma has "opted out" of the federal exemption scheme. *See* Okla.Stat. tit. 31, § 1.B. (West Supp.1990).

In their motion, debtors simply assert that AGF's security interest is nonpurchase money and nonpossessory, and that it impairs debtors' exemption of debtors' "household furnishings and personal household property," without further citation of authority. A review of all of the pleadings and briefs filed herein makes it

1. In connection with the loan transaction, debtors provided a signed collateral appraisal, which shows two lawn mowers, a Toro valued at $300 and a Sears valued at $200. So far as this court is aware, Toro and Sears are two separate brands of lawn mowers.

2. The collateral appraisal reflects that this was debtors' second television. No other television is listed and it is assumed that AGF does not claim a security interest in any other television owned by debtors.

3. References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., unless the context requires otherwise.

4. Section 522(f) provides in pertinent part:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishing, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor....

clear that the claimed basis for exemption of the subject property is Okla.Stat. tit. 31, § 1.A.3. (West Supp.1990), which covers "[a]ll household and kitchen furniture held primarily for the personal, family or household use of [a person residing in the State of Oklahoma] or a dependent of such person."

AGF, in its brief supporting its objection to debtors' motion, contends that none of the listed property is exempt. For this proposition, AGF relies upon *Michalak v. ITT Fin. Serv. (In re Michalak)*, 101 B.R. 276 (W.D.Okla.1988), which in turn relies upon *First Bank of Catoosa v. Reid (In re Reid)*, 757 F.2d 230 (10th Cir.1985), and upon *In re Miller*, 101 B.R. 713, 716 (Bankr.E.D.Okla.1989). AGF urges that debtors herein are attempting to exempt property which is virtually identical to the property for which exemption was denied in *Michalak, supra*. In addition, AGF asserts that the property sought to be exempted consists of luxury items and items used for entertainment and recreation purposes, which are not essential to debtors' household and which are not needed to provide debtors with a "fresh start." In support of this latter proposition, AGF cites *Reid, supra*, and *In re Goldberg*, 59 B.R. 201, 208 (Bankr.N.D.Okla.1986).

In response, debtors rely upon *In re Adkins*, 121 B.R. 393 (Bankr.N.D.Okla.1990), and attack the *Michalak* and *Reid* courts' apparent determinations that property must be a "necessity of life" in order to be exempt. Debtors assert that there is, and should be, no such requirement. Debtors also contend, relying upon *In re Fisher*, 11 B.R. 666 (Bankr.W.D.Okla.1981), that exemption statutes are to be liberally construed, and that if there is doubt as to whether property is exempt, the doubt should be resolved in favor of the exemption.

■ AGF replies to debtors' response by asserting that *Adkins*, being a bankruptcy

court decision from another district,[5] is not of precedential value in this district, and urges this court to follow *Michalak*, a district court decision from this district.[6] AGF notes that disparate rulings have been made by the bankruptcy judges within the three federal judicial districts in Oklahoma, and even by bankruptcy judges within the same district.

AGF cites *In re McKaskle*, 117 B.R. 671 (Bankr.N.D.Okla.1990) and *In re Miller, supra*, as cases in which property similar to that in question in this case was held not to be exempt, and urges that those cases, along with *Michalak*, be followed as being more in line with the earlier court of appeals holding in *Reid*, and with Oklahoma Supreme Court decisions such as *Security Bldg. & Loan Ass'n v. Ward*, 174 Okl. 238, 50 P.2d 651 (1935), requiring that household furniture be "necessary" to the household in order to be exempt.

On October 2, 1991, a hearing was held on debtors' motion and the matter was taken under advisement.

## DISCUSSION AND ANALYSIS

■ This court considers it unfortunate that the "necessities of life" language has, at least in some courts, become part of the lore surrounding the Oklahoma exemption statutes, since in this court's view, it has no place in the law related to that subject. The language appears to have first appeared in the 1935 Oklahoma Supreme Court decision in *Ward, supra*. That case involved the attempted garnishment of proceeds of an insurance policy covering certain property claimed to have been exempt as household and kitchen furniture. *Ward*, 50 P.2d at 656. The case ultimately was remanded to the trial court for a determination of what portion of the property was used for commercial purposes and what portion was used as personal furniture by the insured. In the course of discussing

---

**5.** It is noted that *Adkins* was decided by the U.S. Bankruptcy Court for the Northern, not the Eastern, District of Oklahoma, as AGF states.

**6.** It is noted that a decision of a single district judge in a multi-judge district is not the "law of

the district," although such are to be afforded great deference. *In re Morningstar Enter., Inc.*, 128 B.R. 102, 106 (Bankr.E.D.Pa.1991), *citing Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366 (3rd Cir.1991).

the exemption provision, which at that time covered simply "[a]ll the household and kitchen furniture," the court made the following statement:

> The purposes of the exemption statute are to prevent improvident debtors from becoming subjects of charity by preserving to them sufficient definitely classified property that they may maintain a home for themselves, and to prevent inconsiderate creditors from depriving them of the necessities of life.

*Ward,* 50 P.2d at 657.

The foregoing was not, in this court's opinion, intended to enunciate an additional requirement in order to qualify for the exemption. Further, it did not constitute, and was not necessary to the court's holding, which on this point was as follows:

> [W]e conclude ... that the household and kitchen furniture of the head of a family who is a resident of this state, which is being used for maintaining the home or which is intended to be so used and reasonably necessary for such use, is exempt by law from levy on execution or attachment.

*Id.*

It is noted that the actual holding of the court makes no mention whatever of the "necessities of life." The holding, in this court's view, provides for a much less narrow interpretation of the language of the exemption, and one which more nearly comports with this court's understanding of one of the traditional purposes of exemptive provisions—the preservation of a debtor's dignity.

In this court's view, the holding in *Ward,* as opposed to the possible interpretation of the dictum quoted above, served the useful purpose of judicially engrafting upon the bare language of the exemptive provision the limitation that the property sought to be exempted must be found to be "reasonably necessary" for the maintenance of the

debtor's home. The subsequent amendment of the statute, limiting the exemption to household and kitchen furniture held primarily for the personal, family or household use of the person seeking the exemption, has further defined the permissible reach of the provision.

■ The *Michalak* case was a district court case, on appeal from the bankruptcy court in this district. The court in that case attributed the "necessities of life" language to *Reid,* although it is noted that in *Reid,* the language was properly quoted from and attributed to the earlier *Ward* opinion. The *Michalak* court set out: That the established standard for appellate review of a bankruptcy decision was the "clearly erroneous" rule; that it was unconvinced that the items sought to be exempted in that case were necessities of life; that the bankruptcy court is entitled to determine the issue of exemption on a case-by-case basis; and that it was not persuaded that the determination of the bankruptcy court in that case was clearly erroneous. *Michalak,* 101 B.R. at 278. The decision of the bankruptcy court, that the items were not exempt, was therefore affirmed.[7]

In *Adkins,* the bankruptcy court cited virtually all of the authorities then extant on the household and kitchen furniture exemption issue, and specifically declined to follow any of them. Guided by the admonition in *Fisher,* that exemption statutes are to be liberally construed and that doubt as to whether certain property is exempt should be resolved in favor of the exemption, the *Adkins* court, without any discussion as to individual items, found the following items to be exempt: Two television sets; a VCR; a stereo; speakers; a phonograph; a lawn mower; and a guitar. *Adkins,* 121 B.R. at 397.

In *Miller,* the court reviewed debtors' claim of exemption as household and kitch-

---

7. In reviewing decisions of the bankruptcy courts, findings of fact must be accepted unless they are clearly erroneous, and legal determinations are reviewed *de novo. See In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399–400 (10th Cir.1986); *In re Yeats,* 807 F.2d 874 (10th Cir. 1986); Rule 8013, Fed.R.Bankr.P. This court views the issue of whether a particular item of property comes within the purview of the State exemption statute as a question of law, which would be subject to *de novo* review, although there may be many instances where findings of fact will be required in order to provide a foundation for the ultimate legal determination.

en furniture for a large number of items of personal property intended for a wide range of recreational and entertainment usages, and certain jewelry. *Miller*, 101 B.R. at 714. The court, citing the dictionary definition of "furniture," adopted a literal construction of the exemption statute and denied exempt status to the items of recreational and entertainment property, but determined, also under a definitional interpretation, that the jewelry was entitled to exemption under a different provision, as wearing apparel. *Id.* at 716–17.

As may be seen from the foregoing sampler, one can find authority in the bankruptcy courts in the three federal judicial districts of Oklahoma in support of virtually any position with regard to the household and kitchen furniture exemption. While this court may not disagree with at least a portion of the end result in either of these cases, it is of the view that there should be a middle ground between the highly restrictive literal approach of the court in *Miller* and the unabashed debtor-oriented approach of the court in *Adkins*. In contrast with the dictionary definition approach employed in *Miller*, the court in the earlier *Fisher* case quotes the following from *Swisher v. Clark*, 202 Okl. 25, 209 P.2d 880 (1949):

> In *Commercial Casualty Insurance Co. of Newark, New Jersey v. Adkisson*, 152 Okl. 216, 4 P.2d 50, we used the word "furnishings" for "furniture". This is not the best English, but certainly in our jurisdiction these words are synonymous.

The *Fisher* court concludes, referring to two air conditioners, a vacuum cleaner, a television set and a stereo, that:

> While the items involved herein may not be considered "furniture" in the strictest sense of the word, this Court has no doubt that they are household "furnishings" under most definitions thereof.

*Fisher*, 11 B.R. at 668.

A part of the difficulty which the courts have had in this area is a result of the antiquity of the Oklahoma exemption statute and the failure of the legislature to substantively amend or clarify it over its life. In addition, courts and counsel in Oklahoma are faced with a semantic problem arising from the differences in the language employed in the Bankruptcy Code provision permitting avoidance of liens and that employed in the Oklahoma exemption provision. First, § 522(f)(2)(A) [8] employs the same language as is present in § 522(d)(3) and (4), i.e., "household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments" and "jewelry." This is of course understandable, since lien avoidance is available only if the lien sought to be avoided impairs an exemption to which the debtor would have been entitled under § 522(b), and § 522(b)(1) makes the federal exemptions specified in § 522(d) available to debtors unless their State has opted out of the federal exemptive scheme, as has Oklahoma.

In contrast to the language of § 522(d), the Oklahoma exemptive provision, as has been discussed above, merely refers to household and kitchen furniture. The result of this language difference is that debtors and their counsel frequently are of the view that nonpossessory, nonpurchase money security interests in property described § 522(f)(2)(A) may be avoided, without reference to whether such property "impairs an exemption to which the debtor would have been entitled" under § 522(b).

■ In other words, Oklahoma debtors and counsel do not always consider that the exempt status of the property subject to the lien is a prerequisite to lien avoidance under § 522(f). The problem frequently arises with regard to jewelry, as to which there is no specific exemption in Oklahoma.[9] Debtors subject to the federal exemptions may exempt their interest in jewelry held for personal use, up to $500, under § 522(d)(4).

---

8. See note 4, *supra*.

9. Some jewelry has been found to be exempt as wearing apparel under Okla.Stat. tit. 31, § 1.A.8. (West Supp.1990). *See Goldberg* and *Miller, su-* *pra*. This exemption is limited to the person's interest in wearing apparel, not to exceed $4,000.

In this case, the parties have simply adopted polar positions with regard to the exemption question, and have provided the court with no factual evidence whatever with regard to the specific property subject to the lien sought to be avoided.

Keeping in mind the admonition of the court in *Fisher*, 11 B.R. at 669, that "[e]ach case will be evaluated on its merits with regard to its own particular facts and circumstances to prevent abuses by either creditors or debtors," and guided by the cases which hold that property must be "reasonably necessary" for the maintenance of the home, this court now turns to the property which is the subject of the motion before it.

This court, along with the vast majority of courts, is of the view that a television set is reasonably necessary to the maintenance of a modern household, even though it may not have been specifically contemplated at the time the exemption statute was enacted. A television set provides, without additional cost, national and international news and commentary, weather information which may be critical in ordering our daily lives, and entertainment (albeit frequently of questionable quality). In this case, it is noted that the television set upon which debtors gave AGF a security interest is specifically listed as their second set, and that the property inventory form completed by debtors does not provide space for the description of a first set. This court knows of no reason why more than one television set should be held to be reasonably necessary to the maintenance of a household, and no evidence or contention has been offered in this case in favor of any such exemption.[10]

Although the authorities are clearly split on the issue, this court is of the view that similarly, a video cassette recorder/player ("VCR"), as listed by debtors herein, is reasonably necessary for the maintenance of a modern household. A VCR, normally not an expensive piece of equipment, provides relatively inexpensive and convenient in-home entertainment through "time-shifting" recording and playback of televised events and through universally available video cassette rental.

The court is not of the same view with regard to the stereo (valued by debtors on the appraisal at $800), the camera, the projector, the fishing, golf and tennis equipment, the bicycle, the Nintendo video games, the home computer and the table saw. In this court's view, in the absence of evidence to the contrary as to particular items of uses, those items are not, individually or collectively, reasonably necessary for the maintenance of a household.

As to the lawn equipment, the court is of the view that one lawn mower is reasonably necessary to the maintenance of the household, if for no other reason than that during the growing season an unmowed lawn rapidly becomes a nuisance which may be abated by the municipality at the property-owner's expense. There is, however, no justification for maintaining a second mower. Similarly, neither the rototiller nor the weedeater has been shown to be reasonably necessary to the maintenance of the household.

In ruling as it has, this court is not saying that some or all of the property described herein is not *appropriate* for any household within the State of Oklahoma. The court is saying only that under the laws of the State of Oklahoma, such property is not, *per se*, exempt from the claims of creditors. The court is well aware that many households in this State contain multiple television sets and VCRs, stereo systems of widely varying complexity and value. Some may take such items for granted, while others may never dream of possessing such property. A person's station in life should not govern whether or not a particular piece of property should be shielded from the claims of creditors.

This court is well aware that a creditor holding a security interest in property such as in this case, may have no real interest in recovering all of the property subject to its security interest, but may simply wish to force debtors to redeem the property which

_____

10. The relative value of a television sought to be exempted is not before this court.

they desire to retain in accordance with § 722, assuming that it has been abandoned from the bankruptcy estate under § 554. Since the property has been found not to be exempt, and since it is unlikely to be of any value to the trustee, the creditor should be entitled either to the property itself or to its value.

## CONCLUSION

Based upon the foregoing, the motion to avoid lien filed herein by debtors will be granted as to the VCR and as to one lawn mower, to be elected by debtors, and will be denied as to all other property described in the motion.

IT IS SO ORDERED.